DAVID CITY HOSPITAL, A CHARITABLE CORPORATION, APPELLANT, v. TECKLA GILMORE ET AL., APPELLEES.

167 N. W. 2d 397

Filed April 25, 1969.   No. 37146.

Krause & Howland, for appellant.

Haessler & Sullivan, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

David City Hospital sued Mrs. Gilmore on account of services it had rendered to her mother. It asserted the alternative of (1) quasi-contract based on a statute concerning support of the poor or (2) implied promise. The claims were dismissed at the close of plaintiff's evidence. Plaintiff on appeal contends that the evidence was sufficient to support a finding of liability.

Mrs. Gilmore, admittedly able to do so, supported her indigent mother, Mrs. Kaminski, the two living under one roof. Plaintiff rendered services to Mrs. Kaminski April 28 to May 1, and May 19 to July 15, 1963. The interruption resulted from an accident in which Mrs. Kaminski fractured her hip bone while she was climbing out of bed in plaintiff's hospital. After treatment of the fracture elsewhere she was readmitted to David City Hospital. Its administrator ascribed the May 19 to July 15 hospitalization to a chronic infection of Mrs. Kaminski's urinary tract.

Regarding responsibility of Mrs. Gilmore for plaintiff's charges, the administrator testified: "Q During Mrs. Kaminski's hospitalization did you . . . have any conversation with . . . (Mrs.) Gilmore with regard to the charges . . .? A . . . just the one time . . . . after Mrs. Kaminski had come back . . . . She had been there quite awhile. Her bill was getting quite large and I asked Mrs. Gilmore if it might be possible for us to turn in her insurance policy . . . ; and Mrs. Gilmore said that at that time she thought she would wait until the entire claim was ready to be

settled. . . . Q Did you present a hospital bill to Mrs. Kaminski . . .? A Yes, we did. Q . . . to Mrs. Gilmore? A . . . I don't know . . . . Naturally, we assumed that Mrs. Gilmore would be taking care of these matters because Mrs. Kaminski was pretty old and feeble and Mrs. Gilmore was taking care of all of her business; so we probably gave it to Mrs. Gilmore. . . . I just assumed that Mrs. Gilmore would make sure that the insurance was taking care of the bill; . . . ."

Plaintiff recovered judgment against Mrs. Kaminski in October 1965, for $1,000, the value of the services, together with $132.50 interest. The judgment remains unsatisfied.

The states have adopted different policies regarding suppliers who claim quasi or implied contracts with relatives, other than parents, of paupers. See, Mandelker, "Family Responsibility Under the American Poor Laws," 54 Mich. L. Rev., 607, 612 to 616; tenBroek, "California's Dual System of Family Law . . .", 16 Stan. L. Rev., 257, 312, 900, 905 to 907; Annotations, 116 A. L. R. 1281, 92 A. L. R. 2d 348. Quasi-contract in those situations forms no part of our common law. Dorsey v. Yost, 151 Neb. 66, 36 N. W. 2d 574, 14 A. L. R. 2d 544; Frontier County v. Palmer, 125 Neb. 716, 251 N. W. 830. The statutory section relied on by plaintiff reads:

"Every poor person, who shall be unable to earn a livelihood in consequence of an unavoidable cause, shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers, or sisters of such poor person if they . . . be of sufficient ability. Every person who shall refuse . . . when directed to do so by the county board . . ., shall forfeit and pay to such county board, for the use of the poor of the county . . ., such sum as may be by such county board adjudged adequate and proper to be paid, not exceeding . . . ($25) per week for each and every week for which such relatives . . . shall fail or refuse to pay, to be recovered . . ., for the use of the poor . . .; Provided, when-

ever any persons become poor persons from intemperance or any other bad conduct, they shall not be entitled to support from any relative, except parent or child. Any such poor person, entitled to support from any such relative, may bring an action against such relative for support in his or her own name and behalf." § 68-101, R. R. S. 1943.

Plaintiff's claim is peripheral to the traditional policies of public assistance and fiscal restraint. See, Howard County v. Enevoldsen, 118 Neb. 222, 224 N. W. 280; Riesenfeld, "The Formative Era of American Public Assistance Law," 43 Cal. L. Rev., 175, 199, 225 to 231. The statutory section creates legal relations among pauper, relatives, and county; but it confers no right on suppliers in the position of plaintiff.

Silence and inaction of an offeree who fails to reply to the offer constitute acceptance in the following cases alone: (1) The offeree takes the benefit of offered services with reasonable opportunity to reject them and with reason to know that the offeror expects compensation. (2) The offeror has given the offeree reason to understand that silence or inaction may manifest assent, and the offeree in remaining silent and inactive intends to accept the offer. (3) Previous dealings or other facts reasonably require the offeree to notify the offeror if he does not intend to accept the offer. Restatement, Contracts 2d, Tent. Dr. No. 1 (1964), § 72, p. 290.

The fact that relatives are under a legal duty to support the pauper sometimes implies a promise of payment for necessaries furnished him. See 3 Corbin on Contracts, § 566, pp. 313, 314. In the absence of court order and board directive Mrs. Gilmore owed no legal duty to support her mother. See, Howard County v. Enevoldsen, *supra;* Frontier County v. Palmer, *supra;* In re Estate of Allen, 147 Neb. 909, 25 N. W. 2d 757 (*semble*); Stone v. Brewster, 399 F. 2d 554.

The evidence in this case was insufficient to support

a finding of liability on quasi or implied contract.

AFFIRMED.